FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RONALD L.,[1]

                  Plaintiff,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

              Defendant.

No.    1:22-cv-3090-EFS

**ORDER REVERSING THE
DECISION OF THE ALJ AND
REMANDING FOR ADDITIONAL
PROCEEDINGS**

       Plaintiff Ronald L. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to provide legitimate reasons supported by substantial evidence for discounting medical opinions regarding Plaintiff's mental impairments, the Court reverses the decision of the ALJ and remands this matter for additional proceedings.

//

/

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER - 1

1

## I.    Five-Step Disability Determination

2     A five-step evaluation determines whether a claimant is disabled.[2]  Step one

3  assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two

4  assesses whether the claimant has a medically severe impairment or combination

5  of impairments that significantly limit the claimant's physical or mental ability to

6  do basic work activities.[4]  Step three compares the claimant's impairment or

7  combination of impairments to several recognized by the Commissioner to be so

8  severe as to preclude substantial gainful activity.[5]  Step four assesses whether an

9  impairment prevents the claimant from performing work he performed in the past

10 by determining the claimant's residual functional capacity (RFC).[6]  Step five

11 assesses whether the claimant can perform other substantial gainful work—work

12 that exists in significant numbers in the national economy—considering the

13 claimant's RFC, age, education, and work experience.[7]

## II.    Plaintiff's Mental-Health Background

15     Plaintiff is currently about 54 years old.  As a child, Plaintiff was

16 emotionally and physically abused by his stepfather, who also threatened to kill

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

him.[8]  At age thirteen, Plaintiff ran away and moved in with relatives—an aunt and uncle who paid him in drugs to babysit.[9]  Plaintiff said his uncle also sexually abused him.[10]  In his early twenties, Plaintiff attempted suicide and was psychiatrically hospitalized.  He further reported later cutting his wrists at around the age of 40.[11]

Plaintiff has never been able to sustain a long-term job; he was frequently fired for attendance problems.[12]  In addition to his other mental-health issues, Plaintiff has struggled over the years with addiction and substance abuse—particularly methamphetamine.[13]  However, the record reflects that he has remained sober since December 2018.[14]

Even while sober, Defendant has continued to suffer from symptoms of post-traumatic stress disorder (PTSD), attention-deficit/hyperactivity disorder (ADHD), and depression.[15]  For example, Plaintiff has consistently reported problems with

---

[8] AR 87.

[9] AR 1252.

[10] AR 1216, 1301.

[11] AR 1216.

[12] *See* AR 88.

[13] AR 72.

[14] *See, e.g.*, AR 87, 1258.

[15] *See, e.g.*, AR 87, 364, 527, 1231–35, 1259, 1299.

concentration and feeling depressed or hopeless.[16]  Plaintiff stated, "I can function most days, except for, like, about two or three times a month I just don't get out of bed or anything."[17]  "And then if I happen to see my stepdad or a car that looks like his I won't go outside because I'm afraid he's going to kill me.  He said he was going to kill me[,] and I believe him, you know?"[18]

### III.    Procedural History

In March 2017, Plaintiff filed an application for disability benefits under Title 16.[19]  He claimed disability based on PTSD, ADHD, depression, anxiety, restless sleep due to pain, back pain, and right knee pain.[20]  Plaintiff alleged an onset date of March 1, 2017.  After the agency denied his application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.

In November 2018, ALJ C. Howard Prinsloo held a hearing at which Plaintiff and a vocational expert testified.[21]  In June 2019, the ALJ issued a written decision denying disability.[22]  However, in June 2020, the Appeals Council remanded the case because the ALJ failed to proffer to Plaintiff supplemental

---

[16] *See, e.g.*, AR 1178, 1230, 1259.

[17] AR 88.

[18] AR 87.

[19] AR 320.

[20] AR 353.

[21] AR 64–82.

[22] AR 185–95.

evidence consisting of a psychiatric consultative examination by Tasmyn Bowes, PsyD, and because the ALJ did not conduct a supplemental hearing after Plaintiff's representative requested one to address a subsequent psychiatric consultative examination by Patrick Metoyer, PhD.[23]

In May 2021, the ALJ held a second hearing; Plaintiff and a different vocational expert testified.[24]  In June 2021, the ALJ issued a written decision again denying disability.[25]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 15, 2017, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: ADHD, PTSD, major depressive disorder, and polysubstance dependence.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

///

//

/

---

[23] AR 203–05.

[24] AR 83–96.

[25] AR 15–28.

ORDER - 5

- RFC: Plaintiff had the RFC to perform medium work, subject to the following limitations:

  > no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, or crawling; no concentrated exposure to hazards or vibration; limited to simple, routine, and repetitive tasks with little or no judgment and can perform tasks that can be learned on the job in a short period of less than thirty days.[26]

- Step four: Plaintiff had no past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, he could perform work that existed in significant numbers in the national economy, such as machine packager, cook helper, and hand packager.

The ALJ therefore found Plaintiff not disabled.  Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[27]  Plaintiff then timely appealed to the Court.

### IV.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[28] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[29]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

---

[26] AR 21.

[27] AR 1–3.

[28] 42 U.S.C. § 405(g).

[29] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

mind might accept as adequate to support a conclusion."[30]  Because it is the role of the ALJ to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[31]  Further, the Court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination."[32]

## V.    Analysis

Plaintiff argues the ALJ erred in assessing the medical-opinion evidence, Plaintiff's testimony, and lay-witness evidence relating to his mental impairments.[33]  For the reasons that follow, the Court holds that the ALJ erred by improperly rejecting the medical opinions of three examining psychologists. Because such error requires reversal and necessarily impacted the majority of the ALJ's analysis, the Court need not reach Plaintiff's other assignments of error.

---

[30] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[31] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[32] *Molina*, 674 F.3d at 1115 (cleaned up).

[33] *See generally* ECF No. 13.

1

**A.    Medical Opinions: Plaintiff establishes consequential error.**

2

Plaintiff challenges the ALJ's assessment of the medical opinions that were

3

provided by psychologists Tasmyn Bowes, PsyD, Patrick Metoyer, PhD, and Steven

4

Olmer, PsyD, who conducted psychological evaluations of Plaintiff in January

5

2019, March 2019, and February 2020, respectively.[34]  Each of the three

6

psychologists opined that Plaintiff's mental impairments would cause significant

7

workplace limitations.

8

1.    The Medical Opinions at Issue

9

Dr. Bowes opined that Plaintiff had marked limitations in understanding,

10

remembering, and persisting in tasks by following detailed instructions;

11

performing activities within a schedule, maintaining regular attendance, and being

12

punctual within customary tolerances without supervisor supervision; and setting

13

realistic goals and planning appropriately.[35]  Dr. Bowes also assessed moderate

14

limitations in adapting to changes in a routine work setting, communicating and

15

performing effectively in a work setting, maintaining appropriate behavior in a

16

work setting, and completing a normal workday and workweek without

17

interruptions from his psychologically based symptoms.

18

//

19

/

20

21

[34] *See* AR 1215–25 (Dr. Bowe's evaluation); AR 1228–35 (Dr. Metoyer's evaluation);

22

AR 1251–70 (Dr. Olmer's evaluation).

23

[35] AR 1218–19.

1    Dr. Metoyer opined that Plaintiff had moderate limitations in

2  understanding, remembering, and carrying out complex instructions; making

3  judgments on complex work-related decisions; interacting appropriately with the

4  public, supervisors, and/or coworkers; and responding appropriately to usual work

5  situations and to changes in a routine work setting.[36]

6    Dr. Olmer assessed marked limitations in understanding, remembering, and

7  persisting in tasks by following detailed instructions; adapting to changes in a

8  routine work setting; being aware of normal hazards and taking appropriate

9  precautions; and setting realistic goals and planning independently.  He further

10 opined that Plaintiff was moderately limited in performing activities within a

11 schedule, maintaining regular attendance, and being punctual within customary

12 tolerances without supervisor supervision; communicating and performing

13 effectively in a work setting, and completing a normal workday and workweek

14 without interruptions from his psychologically based symptoms.[37]

15    The ALJ assigned "little weight" to *all* the mental-health-related medical

16 opinions of record, including those of Drs. Bowes, Motoyer, and Olmer.[38]

17 ///

18 //

19 /

---

21 [36] AR 1228–29.

22 [37] AR 1254.

23 [38] AR 24–26.

ORDER - 9

1

2

3

2.    Applicable Standard

Because Plaintiff filed his application prior to March 27, 2017, the following

standard applied to the ALJ's assessment of the medical-opinion evidence.[39]

> To reject the uncontradicted opinion of a treating or examining
> doctor, an ALJ must state clear and convincing reasons that are
> supported by substantial evidence.  If a treating or examining
> doctor's opinion is contradicted by another doctor's opinion, an
> ALJ may only reject it by providing specific and legitimate
> reasons that are supported by substantial evidence.[40]

3.    The ALJ's Reasoning

The ALJ found each of the three psychologists' medical opinions to be

inconsistent with and unsupported by the medical evidence of record.  Specifically,

the ALJ found the assessed limitations were inconsistent with treatment notes in

which Plaintiff presented with (1) "full orientation," (2) "normal concentration and

attention," (3) "normal thought process and content," (4) "normal mood and affect,"

and (5) "normal insight and judgment."[41]  While an ALJ is permitted to reject a

---

[39] Based on Plaintiff's application date, the medical-evidence analysis is governed

by the relevant pre-2017 regulations. *See* Revisions to Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified

at 20 C.F.R. pts. 404 & 416) (effective March 27, 2017).

[40] *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (cleaned up).

[41] AR 25–26.  Specifically, the ALJ discounted the opinions of Drs. Bowes and

Olmer based on Plaintiff's orientation, concentration/attention, and thought

1    medical opinion for being unsupported and/or inconsistent with other evidence,[42]

2    the opinions here were well supported, and the ALJ failed to articulate any

3    meaningful inconsistencies.

4            a.    *The full-orientation findings are irrelevant.*

5            It is true that Plaintiff's treatment providers consistently noted him to be

6    fully oriented.  But such findings indicate only that Plaintiff was adequately aware

7    of his situation and surroundings (oriented to time, place, person, and situation).[43]

8    The three psychologists at issue assessed Plaintiff with limitations arising from his

9    ADHD, PTSD, and depression.  None of them indicated that the limitations were in

10   any way tied to Plaintiff being disoriented.  Thus, there is no inconsistency, and the

---

process/content; the ALJ discounted Dr. Metoyer's opinion based on

concentration/attention, mood/affect, and insight/judgment.

[42] *See* 20 C.F.R. § 416.927(c)(4); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2008).

[43] *See, e.g.*, AR 533. *See also* Rachel M. Voss & Joe M, Das, *Mental Status*

*Examination*, StatPearls Publishing (updated Sept. 12, 2022) available at

https://www.ncbi.nlm.nih.gov/books/NBK546682/ ("Orientation refers to the

patient's awareness of their situation and surroundings.  This is assessed by asking

the patient if they know their name, current location (including city and state), and

date.").

ORDER - 11

1  full-orientation findings cannot serve as a legitimate reason to discount the

2  examining psychologists' opinions.[44]

3          b.  <u>*A single treatment note indicating normal concentration does*</u>

4                 <u>*not amount to substantial evidence.*</u>

5        The ALJ's finding that Plaintiff "showed normal concentration and attention

6  at examination" is supported only by a single treatment note—one on which the

7  ALJ repeatedly relies.[45]  In contrast, the bulk of the medical evidence that

8  addresses the issue reflects concentration problems.  Plaintiff consistently reported

9  having a hard time concentrating,[46] his substance-abuse counselors noted that he

10  "is easily distracted,"[47] and all three examining psychologists found Plaintiff's

11  concentration was *not* within normal limits based on objective testing and their

12  own observations.[48]  Moreover, the single treatment note relied upon by the ALJ

---

[44] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

[45] *See* AR 23, 25–26.

[46] *See, e.g.*, AR 364, 669, 747, 1026, 1259, 1280, 1300, 1313, 1351.

[47] *See* AR 779; *see also* AR 750 ("[A]t several points of the session [Plaintiff] lost concentration which he attributed to a low blood sugar.").

[48] *See* AR 1220 (Dr. Bowes referring to Plaintiff's results on the Trails test); AR 1234 (Dr. Metoyer noting Plaintiff had difficulty performing "serial 7's" and

arose in the context of Plaintiff seeking care for a sprained knee; it is unlikely that the physician assistant who examined Plaintiff at the time gave priority to fully and carefully assessing Plaintiff's concentration abilities.[49]  Especially considering the tendency of mental-impairment symptoms to wax and wane,[50] substantial evidence does not support the ALJ's use of a normal concentration finding upon physical examination to discount the well-supported medical opinions of three examining psychologists.[51]

////

///

//

/

---

"serial 3's"); AR 1256 (Dr. Olmer noting Plaintiff "needed to be redirected multiple times in the session to answer questions").

[49] *See* AR 519; *see also Ghanim*, 763 F.3d at 1164 (requiring the ALJ to consider the purpose and scope of the treatment examination and the provider's comments in the context of the longitudinal treatment).

[50] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence. . . .").

[51] *See id.* at 1018 (The examples an ALJ chooses "must *in fact* constitute examples of a broader development."); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("[The ALJ] cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

c.    *The normal thought process/content findings do not undermine the psychologists' medical opinions.*

A person's thought process is generally considered normal so long as it is "linear and goal-directed."[52]  Treatment notes regarding thought content usually refers to whether the person exhibits any suicidal ideations, homicidal ideations, or delusions.[53]  Dr. Bowes and Dr. Metoyer both included normal findings in their evaluations,[54] and Dr. Olmer said Plaintiff's thought content was within normal limits but that "he appeared to be tangential in his thought processing."[55]  Clearly, these three psychologists considered such findings to be fully consistent with the limitations they assessed.  The ALJ apparently disagreed, but he did not explain why the psychologists were wrong or how any of the opined limitations are inconsistent with Plaintiff sometimes presenting with normal thought process and content.[56]

---

[52] *See* Voss, *Mental Status Examination* ("For a normal thought process, the thoughts are described as linear and goal-directed. Common descriptions of irregular thought processes are circumstantial, tangential, the flight of ideas, loose, perseveration, and thought blocking.").

[53] *See, e.g.,* AR 617, 919, 1233. *See also* Voss, *Mental Status Examination*.

[54] AR 1219, 1233.

[55] AR 1255.

[56] *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (The ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was error,

### d. *Plaintiff sometimes exhibiting a normal mood/affect does not undermine the psychologists' medical opinions.*

The ALJ found "the claimant's normal mood and affect do not support the limitations opined by Dr. Metoyer."[57]  Dr. Metoyer, however, observed Plaintiff as having a depressed mood and congruent affect during his psychological evaluation.[58]  Further, the longitudinal record is mixed between Plaintiff presenting with a normal versus abnormal mood/affect.[59]  Indeed, even within the same month, Plaintiff's mood and affect could vary significantly.[60]

---

as the ALJ failed to explain why the physician's opinion was flawed.); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (The ALJ must "build an accurate and logical bridge from the evidence to h[is] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[57] AR 26.

[58] AR 1233.

[59] *See* AR 1219 (Jan. 2019: Dr. Bowes noting dysphoric mood and blunted affect); AR 1255 (Feb. 2020: Dr. Olmer noting Plaintiff's mood to be within normal limits and his affect to be "Appropriate to context"); *see also, e.g.*, AR 604 (March 2017: "presented to group with flat affect"); AR 669 (Aug. 2017: "presented in a neutral/somber mood and appropriate affect"); AR 1059 (March 2018: "presented in a more positive mood and energetic affect compared with past session"); AR 1181 (June 2018: noting, "Appropriate mood and affect" but PHQ-9 results consistent

1       Due to the nature of mental impairments such as PTSD and depression,

2  including their tendency to wax and wane in symptomology, variation in

3  mood/affect upon examination is generally considered par for the course; that is,

4  someone can sometimes (or even frequently) present to appointments with a

5  normal mood/affect and yet still suffer from severe PTSD and/or depression.[61]  The

6  ALJ did not explain how the mixed treatment notes were inconsistent with

7  Dr. Metoyer's medical opinion.  Rather, the ALJ made a generalized reference to

8  only those treatment notes in which Plaintiff presented with a normal mood/affect.

9  This does not constitute a specific and legitimate reason supported by substantial

10  evidence to reject an examining psychologist's medical opinion.[62]

11      4.   <u>Insight and Judgment</u>

12       The ALJ further found that Plaintiff's "normal insight and judgment do not

13  support the limitations opined by Dr. Metoyer."[63]  Yet again, however, the

14

15  with moderate depression); AR 1229 (Feb. 2020: noting euthymic mood and full

16  affect but disheveled appearance and impaired attention/concentration).

17  [60] *See, e.g.*, AR 747, 1086 (Jan. 2018: "neutral mood and tired affect"); AR 923, 1077

18  (Jan. 2018: "dysthymic mood and restricted affect"); AR 1071 (Jan. 2018: "somber

19  mood and tired affect").

20  [61] *See Garrison*, 759 F.3d at 1017.

21  [62] *See Revels*, 874 at 654; *see also Garrison*, 759 F.3d at 1018 (The examples an ALJ

22  chooses "must *in fact* constitute examples of a broader development.").

23  [63] AR 26.

longitudinal record shows mixed findings as to Plaintiff's insight/judgment.[64]  Also, while repeated normal findings in this area might reasonably be interpreted as inconsistent with a moderate limitation in Plaintiff's ability to "make judgments on complex work-related decisions,"[65] the ALJ did not explain how Plaintiff having generally normal insight and/or judgment would undermine any of the other limitations assessed by Dr. Metoyer.  Moreover, even if the fact that Plaintiff sometimes presented with normal insight/judgment was a valid reason to discount Dr. Metoyer's opinion, the ALJ did not rely on this reasoning when discounting the opinions of Dr. Bowes or Dr. Olmer.[66]

---

[64] *See, e.g.*, AR 1220 (Jan. 2019: Dr. Bowes noting "Poor insight"); AR 1256 (Feb. 2020: Dr. Olmer finding Plaintiff's insight and judgment to be within normal limits); *see also, e.g.*, AR 598 (March 2017: "Insight/judgment appeared fair to good."); AR 1175 (June 2018: "Poor insight. Poor judgment."); AR 1356 (July 2019: "Poor insight. Poor judgment."); AR 1312 (Sept. 2020: "Within normal limits").

[65] *See* AR 1228. *Cf. Molina*, 674 F.3d at 1111 (A reviewing court must uphold the ALJ's findings "if they are supported by inferences reasonably drawn from the record.").

[66] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

a.    *The ALJ's errors require reversal.*

All of the ALJ's asserted reasons fail.  The ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting any of the three medical opinions provided by examining psychologists.[67]  Had the ALJ fully credited one or more of these medical opinions—such by incorporating marked limitations in Plaintiff's ability to maintain regular attendance or in his ability to adapt to changes in a routine work setting—it is likely that Plaintiff would have been found disabled.[68]  The ALJ's error was therefore consequential and requires reversal.[69]

////

///

//

/

---

[67] *See Revels*, 874 at 654.

[68] *See Robbins. v. Soc. Sec. Admin*, 466 F.3d 880, 886 (9th Cir. 2006) (noting that the ALJ must include properly supported functional limitations in the RFC hypothetical posed to the vocational expert to ensure the identified occupations are consistent with claimant's functional limitations).

[69] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (An error is consequential unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination.").

1

**B.    Remand for Further Proceedings.**

2

3

4

5

Although Plaintiff seeks remand for immediate payment of benefits, when a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course.[70]  And, here, the Court cannot say that further proceedings would serve no useful purpose.[71]

6

7

8

9

10

11

12

13

Even if the examining psychologists' opinions were credited as true, the current record does not clearly establish disability.  For example, while Dr. Bowes opined that Plaintiff's ability to maintain regular attendance would be subject to a "very significant limitation,"[72] this limitation was never translated into an average number of work absences that Plaintiff's mental impairments were likely to cause in a given period.[73]  Additionally, while the three examining psychologists gave opinions that are largely consistent with each other, there are also significant differences between the kind and severity of the limitations they assessed.[74]

14

15

16

[70] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

17

[71] *See Garrison*, 759 F.3d at 1020.

18

19

[72] AR 1218 (defining "Marked" as meaning "a very significant limitation on the ability to perform the activity").

20

21

[73] *Cf.* AR 81 (vocational expert testifying that exceeding an average of 6 absences per year would preclude competitive employment).

22

23

[74] *Compare, e.g.*, AR 1218 (Dr. Bowes opining that Plaintiff's limitation in being aware of normal hazards and taking appropriate precautions was "None or Mild")

1    Further proceedings are therefore necessary for the ALJ to harmonize the differing

2    medical opinions—and the rest of the evidence of record—into a unified RFC.[75]

3         That said, Plaintiff's case has already been remanded due to the ALJ's

4    improper handling of medical evidence concerning Plaintiff's mental impairments.

5    The ALJ has twice now had the opportunity to explain the supportability and

6    consistency of the examining psychologists' medical opinions.  "Allowing the

7    Commissioner to decide the issue again would create an unfair 'heads we win; tails,

8    let's play again' system of disability benefits adjudication."[76]  As such, on remand,

9    the ALJ shall not discredit the medical opinions of Dr. Bowes, Dr. Metoyer, or

10    Dr. Olmer for the reason that he considers them inconsistent with or unsupported

11    by the medical evidence of record.[77]

---

*with, e.g.*, AR 1254 (Dr. Olmer opining that Plaintiff's limitation in the same area
was "Marked").

[75] *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact
and not the reviewing court must resolve conflicts in the evidence[.]"); *Diedrich v.
Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) ("The ALJ is responsible for studying
the record and resolving any conflicts or ambiguities in it.").

[76] *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)

[77] *Cf. Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009) ("This Court has
recognized that there are other factors which may justify application of the credit-
as-true rule, even where application of the rule would not result in the immediate
payment of benefits.").

## VI.    Conclusion & Instructions on Remand

The ALJ consequentially erred by rejecting three examining psychologists' opinions without providing specific and legitimate reasons supported by substantial evidence.[78]  Further proceedings are required for the ALJ to reevaluate Plaintiff's mental impairments.

On remand, if necessary, the ALJ is to further develop the record regarding Plaintiff's mental impairments.  The ALJ is to then reevaluate—with meaningful articulation and evidentiary support—the sequential process as to Plaintiff's mental impairments.  In doing so, the ALJ shall not discredit the medical opinions of Dr. Bowes, Dr. Metoyer, or Dr. Olmer because he considers them inconsistent with or unsupported by the medical evidence of record.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    The Clerk's Office shall **TERM** the Commissioner's Brief, **ECF No. 14**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4.    The decision of the ALJ is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

//

---

[78] *See Revels*, 874 F.3d at 654.

1    5.    The case shall be **CLOSED**.

2    IT IS SO ORDERED.  The Clerk's Office is directed to file this order and

3   provide copies to all counsel.

4    DATED this 12th day of July 2023.

5                            _Edward F. Shea_

6                      _____
                            EDWARD F. SHEA

7                      Senior United States District Judge